UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- X

HENRI[ETTA] DONER-HENDRICK,

               Plaintiff,

   - against -

NEW YORK INSTITUTE OF
TECHNOLOGY, ITS TRUSTEES AND
OFFICERS,

               Defendant.

------------------------------------------------- X

**OPINION AND
ORDER**

11 Civ. 121 (SAS)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/6/11

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

Henrietta Doner-Hedrick brings suit against her former employer, the New York Institute of Technology, Its Trustees and Officers ("NYIT"), alleging disparate treatment on the basis of race, religion, sex, and national origin; hostile work environment; and retaliation, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), and the New York State Human Rights Law ("NYSHRL"). Doner-Hedrick further alleges NYIT violated the Fair Labor Standards Act ("FLSA"). Finally, Doner-Hedrick alleges that NYIT breached both her employment contract with NYIT and the collective bargaining agreement ("CBA") between the American Association of

University Professors ("AAUP") and NYIT.  NYIT now moves to dismiss every

claim except for breach of plaintiff's employment contract.  For the following

reasons, defendant's motion is granted in part and denied in part.

## II.    BACKGROUND[1]

Plaintiff is a 58 year-old "Multiracial Filipina-American female" and

resident of Kansas.[2]  She has degrees in art and experience as a graphic designer,

illustrator, and teacher.[3]  On September 1, 2008, she commenced employment with

NYIT pursuant to a three-year contract to teach Computer Graphics ("CG") at

NYIT's campus in Amman, Jordan.[4]

Shortly after her arrival in Amman, plaintiff attended a dinner with

fellow faculty members, including Catherine Kourouklis, coordinator of the CG

department.  At the dinner, Kourouklis and others made disparaging age-related

jokes and comments about Jacqueline Basker, another professor in the CG

Department.[5]  Although she did not join the conversation, plaintiff felt she was to

---

[1]    On a motion to dismiss, a plaintiff's factual allegations are accepted as true.  *See, e.g.*, *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec. LLC*, 568 F.3d 374, 376 (2d Cir. 2009).

[2]    *See* Complaint ("Compl.") ¶¶ 9, 11.

[3]    *See id.* ¶¶ 12-13.

[4]    *See id.* ¶¶ 14, 23.

[5]    *See id.* ¶¶ 16-18.

side with Kourouklis against Basker.[6]

Robert Michael Smith, Global Coordinator of Middle East Fine Arts and Computer Graphics Programs for NYIT, sent emails to plaintiff in November 2008 stating: (i) plaintiff was an excellent professor and best qualified to coordinate the CG program,[7] (ii) Kourouklis had a "personal agenda to rid Amman of the Fine Arts CG faculty,"[8] (iii) plaintiff had become Kourouklis' "new target,"[9] and (iv) NYIT's administration was aware of Kourouklis' "incompetence."[10] On November 28, 2008, Smith sent an email stating: "there must be at least some residual racism [among the students], if they recognize you are part Fillipina [sic] since their culture has regularly used Fillipinas [sic] as nannies and maids for a very long time."[11]

Kourouklis was popular with the students due to her easy grading and frequent parties.[12] Students often went to her with complaints when they could not

---

[6]     *See id.* ¶ 18.

[7]     *See id.* ¶¶ 22-23.

[8]     *Id.* ¶ 26.

[9]     *Id.* ¶ 24.

[10]    *Id.* ¶ 29.

[11]    *Id.* ¶ 32.

[12]    *See id.* ¶ 27.

get what they wanted from other faculty members.[13]  Kourouklis even sided with disruptive students in plaintiff's class after plaintiff had disciplined them.[14]  In another email dated November 28, 2008, Smith stated that Kourouklis' "over fostering of the problem students" and catering to low academic standards was emblematic of a "general problem at [NYIT's] Middle East Campuses."[15]

On February 8, 2009, plaintiff asked Kourouklis to cease calling her "sweetie," because she found it offensive and disrespectful.[16]  On April 5, 2009, plaintiff observed – and later reported to Smith – Kourouklis scold and explicitly insult another professor for his devotion to Islam.[17]  On April 6, 2009, Smith indicated in an email that the upper administration of NYIT was aware of Kourouklis' behavior.[18]  A week later, Kourouklis surprised plaintiff by conducting a performance assessment without prior notice, which plaintiff interpreted as an unfair "academic ambush."[19]

---

[13]     *See id.* ¶ 43.

[14]     *See id.* ¶ 27.

[15]     *Id.* ¶¶ 27, 31.

[16]     *Id.* ¶ 38.

[17]     *See id.* ¶¶ 44-45.

[18]     *See id.* ¶ 47.

[19]     *Id.* ¶ 51.

4

Kourouklis was removed as the coordinator of the CG Department on April 27, 2009, and was replaced by Basker, but Kourouklis retained her position on the faculty.[20]  On October 20, 2009, plaintiff's entire Senior Thesis I class boycotted by skipping her class.[21]  Plaintiff believed Kourouklis encouraged the students to boycott her class in retaliation for plaintiff's report to NYIT administration concerning Kourouklis' remarks about Islam.[22]

In addition to the one-day boycott, students in plaintiff's Senior Thesis I class were often disruptive and disrespectful.[23]  Plaintiff believed this behavior arose because she was Asian, a people most of the students had only encountered as domestic workers.[24]  She also believed that the students were trying to "get back" at her for giving them low grades and a heavy workload.[25]  On November 22, 2009, hoping to encourage "out of the box" thinking, plaintiff proposed the students should design a shoe-shaped pink mosque that would be for

---

[20]     *See id.* ¶ 53.

[21]     *See id.* ¶ 61.

[22]     *See id.* ¶¶ 61, 63.

[23]     *See id.* ¶ 64.

[24]     *See id.* ¶ 119.

[25]     *Id.* ¶ 64.

women only.[26]  Although none of the students commented at the time, seven

students subsequently filed a complaint against plaintiff, requesting that NYIT take

immediate action for plaintiff's conduct, which they found offensive as "Muslim

and Jordanian students."[27]  Plaintiff and Basker suspected that Kourouklis

encouraged and helped the students draft the complaint because the level of

English in the complaint was beyond the students' capacity.[28]  Basker also believed

that the students' anger about grades and apprehension about failing plaintiff's

course provided further motives for bringing the complaint.[29]

On November 30, 2009, plaintiff received a phone call from Provost

Richard Pizer who informed her that her employment contract was terminated,

effective immediately.[30]  Plaintiff requested an explanation for her mid-contract

termination, to which she has not received a response.[31]

## III.   LEGAL STANDARD

### A.     Failure to State a Claim under Rule 12(b)(6)

---

[26]     *Id.* ¶ 66.

[27]     *Id.* ¶ 67.

[28]     *See id.* ¶¶ 68, 74.

[29]     *Id.* ¶ 68.

[30]     *See id.* ¶ 78.

[31]     *See id.* ¶ 82.

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court evaluates the sufficiency of the complaint under the "two-pronged approach" dictated by the Supreme Court in *Ashcroft v. Iqbal*.[32] First, a court "'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"[33] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand a motion to dismiss.[34]  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[35]

To survive a Rule 12(b)(6) motion to dismiss, the allegations in the complaint must meet a standard of "plausibility."[36]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the

---

[32]     129 S. Ct. 1937, 1950 (2009).

[33]     *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1950).  *Accord Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010).

[34]     *Iqbal*, 129 S. Ct. at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[35]     *Id.* at 1950.  *Accord Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010).

[36]     *Twombly*, 550 U.S. at 564.

reasonable inference that the defendant is liable for the misconduct alleged."[37]
Plausibility "is not akin to a probability requirement;" rather, plausibility requires
"more than a sheer possibility that a defendant has acted unlawfully."[38]

"In considering a motion to dismiss for failure to state a claim
pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the
complaint, documents attached to the complaint as exhibits, and documents
incorporated by reference in the complaint."[39]   However, the court may also
consider a document that is not incorporated by reference, "where the complaint
'relies heavily upon its terms and effect,' thereby rendering the document 'integral'
to the complaint."[40]

With respect to employment discrimination cases, a plaintiff is not
required to make a prima facie case at the pleading stage.[41]   However, "the claims

---

[37]     *Iqbal*, 129 S. Ct. at 1949.

[38]     *Id.* (quotation marks and citation omitted).

[39]     *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)
(citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

[40]     *Id*. (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir.
2006)).  *Accord Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d
150, 156 (2d Cir. 2006).

[41]     *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) ("The
prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a
pleading requirement."); *Braphman-Bines v. New York City Police Dep't*, No. 03
Civ. 10207, 2005 WL 22843, at *3 (S.D.N.Y. Jan. 3, 2005) ("Whether [plaintiff]

must be facially plausible" to survive a motion to dismiss.[42]  The court "considers the elements of a prima facie case in determining whether there is sufficient factual matter in the Complaint which, if true, give [d]efendant fair notice of [p]laintiff's employment discrimination claims and the grounds on which such claims rest."[43]

**B.     Lack of Subject Matter Jurisdiction under Rule 12(b)(1)**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."[44]  The plaintiff bears the burden of proving the existence of subject matter jurisdiction by a preponderance of the evidence.[45]  "When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff."[46]  In resolving a motion to dismiss under Rule 12(b)(1), a court is not

---

has, or ultimately can, fulfill the requirements of the *McDonnell Douglas* test, however, is not the proper inquiry at [the pleading] stage in the litigation.") (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

[42]     *Mabry v. Neighborhood Defender Serv.,* --- F. Supp. 2d ----, No. 10 Civ. 4016, 2011 WL 335867, at *6 (S.D.N.Y. Jan. 31, 2011).

[43]     *Maysonet v. Citi Grp., Inc.*, No. 10 Civ. 4616, 2011 WL 476610, at *3 (S.D.N.Y. Feb. 9, 2011) (quotation marks and citations omitted).

[44]     *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

[45]     *See Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir. 1998).

[46]     *Raila v. United States*, 355 F.3d 118, 119 (2d Cir. 2004).

limited to the face of the complaint and may consider evidence outside the pleadings, including affidavits submitted by the parties.[47]

## C.   Amendments to Pleadings under Rule 15(a)

"Rule 15(a) provides that, other than amendments as a matter of course, a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."[48]  "[W]hether to permit a plaintiff to amend its pleadings is a matter committed to the Court's sound discretion."[49]  The Supreme Court has explained that

> [i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave sought should, as the rules

---

[47]     *See Robinson v. Government of Malaysia*, 269 F.3d 133, 140-41 (2d Cir. 2001).

[48]     *Slayton v. American Express Co.*, 460 F.3d 215, 226 n.10 (2d Cir. 2006) (quotation marks and citation omitted).

[49]     *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (quotation marks and citation omitted).

require, be "freely given."[50]

Therefore, "'[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead.'"[51]

## IV.   APPLICABLE LAW

### A.   Timeliness: Title VII and ADEA Claims

In order for Title VII and ADEA claims to be timely, they must be filed within ninety days of the plaintiff's receipt of a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC").[52]  In assessing timeliness, a court may assume that a right-to-sue letter was mailed on the date shown on the document.[53]  A court may also assume that a mailed document was received three days after mailing.[54]  However, these presumptions are rebutable.[55]  "If a [plaintiff]

---

[50]    *Foman v. Davis*, 371 U.S. 178, 182 (1962).  *Accord Jin v. Metropolitan Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002).

[51]    *Vacold LLC v. Cerami*, No. 00 Civ. 4024, 2002 WL 193157, at *6 (S.D.N.Y. Feb. 6, 2002) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)).  *Accord Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999) ("When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint.").

[52]    *See Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525 (2d Cir. 1996) (citing *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147 (1984) (per curiam)).

[53]    *See id.* at 526.

[54]    *See id.* at 525.

[55]    *See id.* at 526.

11

presents sworn testimony or other admissible evidence from which it could reasonably be inferred either that the notice was mailed later than its type-written date or that it took longer than three days to reach her by mail, the initial presumption is not dispositive."[56]

While the ninety-day filing requirement is akin to a statute of limitations,"[57] and is "not to be disregarded by courts out of a vague sympathy for particular litigants,"[58] it is subject to the doctrine of equitable tolling.[59]  However, "equitable tolling . . . is appropriate only in rare circumstances where 'a party is prevented in some extraordinary way from exercising his rights.'"[60]  "Federal courts have typically extended equitable relief only sparingly," and "have been much less forgiving where the claimant failed to exercise due diligence in preserving [her] legal rights."[61]

---

[56]     *Id.*

[57]     *See Vollinger v. Merrill Lynch & Co.*,198 F. Supp. 2d 433, 440 (S.D.N.Y. 2002) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)).

[58]     *Baldwin*, 466 U.S. at 152.

[59]     *See Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95 (1990).

[60]     *Falso v. Gates Chili Cent. Sch. Dist.*, 408 Fed. App'x 494, 496 (2d Cir. 2011) (quoting *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003)).

[61]     *Irwin*, 498 U.S. at 96.

### B.    Subject Matter Jurisdiction

### 1.    NYSHRL

"A nonresident plaintiff may invoke the protection of the . . . State Human Rights Laws only by proving that the discriminatory act or acts took place within [New York]."[62]  A nonresident plaintiff must additionally "plead and prove that the alleged discriminatory conduct had an *impact* in New York."[63]

### 2.    Title VII and the ADEA

Title VII, as amended by the Civil Rights Act of 1991, protects U.S. citizens employed by American entities in foreign countries.[64]  Likewise, the ADEA protects U.S. citizens employed by American entities in foreign countries.[65]

### C.    Title VII and ADEA Employment Discrimination Claims

---

[62]    *Pearce v. Manhattan Ensemble Theater, Inc.,* 528 F. Supp. 2d 175, 184 (S.D.N.Y. 2007) (citations omitted).  *Accord Hoffman v. Parade Publ'ns*, 15 N.Y.3d 285, 291-92 (2010).

[63]    *Hoffman*, 15 N.Y.3d at 291 (emphasis added) (holding that a nonresident's allegation that a discriminatory decision to terminate was made in New York was insufficient to support subject matter jurisdiction under the NYSHRL).  Before the Court of Appeals established the impact requirement in *Hoffman*, the issue was unsettled as to the jurisdictional scope of the NYSHRL. See the thorough discussion of the issue in *Rohn Padmore, Inc. v. LC Play Inc.*, 679 F. Supp. 2d 454, 462-65 (S.D.N.Y. 2010).

[64]    *See* 42 U.S.C. § 2000e(f).

[65]    *See* 29 U.S.C. § 630(f).

### 1.     Disparate Treatment

Title VII proscribes discrimination against an individual on the basis

of, *inter alia*, race, religion, sex, or national origin.[66]  To make a prima facie case[67]

of discrimination under Title VII, a plaintiff must show: "(1) [s]he is a member of a

protected class; (2) [s]he was qualified for the position [s]he held; (3) [s]he

suffered an adverse employment action; and (4) the adverse action took place

under circumstances giving rise to [an] inference of discrimination" based on her

membership in the protected class.[68]  An adverse employment action is an action

by which a plaintiff "has suffered 'a materially adverse change in h[er]

employment status,'" including termination of employment.[69]  "It is well-settled

that an inference of discriminatory intent may be derived from a variety of

circumstances, including, but not limited to: . . . 'the employer's criticism of the

plaintiff's performance in ethnically degrading terms; or its invidious comments

---

[66]     *See* 42 U.S.C. § 2000e-2.

[67]     The plaintiff is not required to make a prima facie case to survive a motion to dismiss; however, a court considers the elements of a prima facie case in determining whether a plaintiff's allegations are facially plausible.

[68]     *Ruiz v. County of Rockland*, 609 F.3d 486, 492 (2d Cir. 2010) (citations omitted).

[69]     *See Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 207 (2d Cir. 2006) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004)).

about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'"[70]

## 2.    Hostile Work Environment

An employee seeking to bring a hostile work environment claim under Title VII or the ADEA must demonstrate the following to make a prima facie case: (1) she is a member of a protected class; (2) she suffered unwelcome harassment; (3) she was harassed because of her membership in a protected class; and (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment.[71]  Additionally, there must be a "'specific basis for imputing the conduct creating the hostile work environment to the employer.'"[72]

Evaluating a hostile environment involves reviewing the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity;

---

[70]    *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009) (quoting *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994)).

[71]    *See Monterroso v. Sullivan & Cromwell, LLP*, 591 F. Supp. 2d 567, 584 (S.D.N.Y. 2008) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 (2d Cir. 1995), *abrogated on other grounds by Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998)).

[72]    *Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009) (quoting *Feingold v. New York*, 366 F.3d 138, 149–50 (2d Cir. 2004)).

whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[73] Indeed, it is well-established that Title VII "'does not set forth a general civility code for the American workplace.'"[74]  The question is whether "a reasonable person would have found it to be [hostile] and if the plaintiff subjectively so perceived it."[75]

### 3.   Retaliation

Under Title VII, it is also unlawful for an employer to discriminate against an employee because she "has opposed any practice made an unlawful employment practice" by Title VII.[76]  To establish a prima facie case of retaliation, the plaintiff must show: "(1) that she participated in [a protected activity], (2) that her participation was known to her employer, (3) that her employer thereafter subjected her to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment

---

[73]   *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23 (1993).

[74]   *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 76 (2d Cir. 2010) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

[75]   *Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 119 (2d Cir. 2010).

[76]   42 U.S.C. § 2000e-3(a).  *See also Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010).

16

action."[77]  An adverse employment action in the context of a retaliation claim is an

action sufficiently severe to dissuade a reasonable worker from making or

supporting a complaint or charge of discrimination.[78]  "[A]nti-discrimination and

anti-retaliation provisions 'are not coterminous;' anti-retaliation protection is

broader and 'extends beyond workplace-related or employment-related retaliatory

acts and harm.'"[79]

> "Proof of causation can be shown either: (1) indirectly, by
> showing that the protected activity was followed closely by
> discriminatory treatment, or through other circumstantial
> evidence such as disparate treatment of fellow employees
> who engaged in similar conduct; or (2) directly, through
> evidence of retaliatory animus directed against the plaintiff
> by the defendant."[80]

### 4.   Claims Against Individuals and Vicarious Liability of Employer for Acts of Its Agents

It is well settled in this Circuit that "'individuals are not subject to

liability under Title VII.'"[81]  Likewise, the ADEA precludes individual liability.[82]

---

[77]   *Kaytor*, 609 F.3d at 552.

[78]   *See White*, 548 U.S. at 68.

[79]   *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (quoting *White,* 548 U.S. at 67).

[80]   *Id.* at 170 (quoting *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).

[81]   *Sassaman v. Gamache*, 566 F.3d 307, 315-16 (2d Cir. 2009) (quoting *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004)).  *See also*

Furthermore, where a plaintiff names a corporate employer as a defendant, naming co-employees in their "official capacity" is redundant because "a corporate employer is accountable for the acts of its agents within the scope of their employment," regardless of whether those agents are named in the complaint.[83]

## V.   DISCUSSION

### A.   Equitable Tolling Is Appropriate for Doner-Hedrick's ADEA and Title VII Claims

Plaintiff was obligated to file her Title VII and ADEA claims within ninety days of receiving the EEOC right-to-sue letter.  Although the parties dispute the actual date of receipt, the court assumes the veracity of well-pleaded factual allegations when deciding a Rule 12(b)(6) motion.[84]  Therefore, for purposes of this motion, I assume that plaintiff received the right-to-sue letter on September 25, 2010.[85]  Ninety days from the date of receipt was December 24, 2010, which was a legal holiday.  Pursuant to Local Civil Rule 6.4, when the last day of a statutory

_Tomka,_ 66 F.3d at 1313.

[82]   _See Cherry v. Toussaint_, 50 Fed. App'x 476, 477 (2d Cir. 2002) (dismissing ADEA claim against trustees of plaintiff's former employer).

[83]   _Tishman v. Associated Press_, No. 05 Civ. 4278, 2005 WL 3466022, at *2 (S.D.N.Y. Dec. 16, 2005) (citing _Ellerth_, 524 U.S. at 758).

[84]   _See Iqbal_, 129 S. Ct. at 1950.

[85]   _See_ Plaintiff's Memorandum of Law in Opposition to the Defense Motion to Dismiss ("Opp. Mem.") at 14.

period falls on a legal holiday, a claimant has until the end of the next day that is

neither a holiday nor a weekend to file her complaint.  In this case that day was

December 27, 2010, when this Courthouse was unexpectedly closed due to

inclement weather.  Accordingly, plaintiff was required to file her Title VII and

ADEA claims by the end of the day on December 28, 2010.  The Complaint is

stamped seventeen minutes late, at 12:17 AM, December 29, 2010.

Equitable tolling is appropriate here.  None of the evidence indicates

plaintiff herself failed to exercise due diligence in protecting her rights.  Because

she lives in Kansas, plaintiff was probably unaware of exactly when her counsel

intended to file the Complaint, and simply believed quite reasonably that she had

done everything required of her.  Seventeen minutes, an insignificant margin, is

simply too minor to bar a plaintiff who has exercised due diligence from reaching

the merits of her claims.[86]  Therefore, defendant's motion to dismiss plaintiff's

Title VII and ADEA claims as time barred is denied.

### B.   Title VII and the ADEA

#### 1.   Doner-Hedrick States a Plausible Claim for Disparate

---

[86]    The entirely foreseeable though extraordinary difficulties faced by plaintiff's counsel (gridlock caused by the remnants of a snowstorm) in traveling to the courthouse are irrelevant:  counsel had over ninety days to prepare and file the Complaint, and waited until (seventeen minutes past) the last possible moment to do so.

### Treatment under Title VII[87]

NYIT does not contest that plaintiff satisfies the first three prongs of a prima facie case for disparate treatment under Title VII.  NYIT moves to dismiss plaintiff's Title VII claim for failure to satisfy the fourth prong, arguing that plaintiff has not alleged circumstances giving rise to a reasonable inference of discrimination.

Plaintiff states a facially plausible claim for disparate treatment under Title VII.  Plaintiff alleges that she observed Kourouklis insult another faculty member's religion, mocking his devotion to Islam.[88]  Plaintiff reported the incident to Smith, who reported it to NYIT's "upper administration."[89]  Kourouklis was subsequently demoted from her position as coordinator of the CG Department, but remained a faculty member.  On the other hand, plaintiff was fired shortly after making a religiously provocative – though not clearly inappropriate – comment to her Student Thesis class.[90]  An inference of discrimination may be derived from

---

[87]   Plaintiff withdrew ADEA claims arising from any adverse employment action, and now invokes the ADEA only for the purpose of claiming a hostile work environment.  *See* Opp. Mem. at 25.

[88]   *See* Compl. ¶¶ 44-45.

[89]   Opp. Mem. at 4.

[90]   Compl. ¶ 65.

"the more favorable treatment of employees not in the protected group."[91]  NYIT, who allegedly knew of both incidents, fired plaintiff, who is Asian, but permitted Kourouklis, a Caucasian, to retain a faculty position, notwithstanding her arguably more inappropriate behavior.[92]  Thus, plaintiff alleges circumstances giving rise to a reasonable inference of discrimation.  NYIT's motion to dismiss plaintiff's claim for disparate treatment under Title VII is therefore denied.

### 2.   Doner-Hedrick's Hostile Work Environment Claims Are Dismissed

Plaintiff fails to make facially plausible claims for hostile work environment under the ADEA or Title VII.  The Complaint alleges only one instance of a discriminatory remark based on age and one discriminatory remark based on religion, both of which were made by Kourouklis and neither of which were directed at plaintiff.[93]  A few isolated offensive utterances by a single co-

---

[91]     *Leibowitz*, 584 F.3d at 502.

[92]     *See* Compl. ¶ 105 (quoting February 2, 2010, email from Basker to Smith:  "Henri was dismissed for an unintended insult to Islam . . . that the local academic administration and myself felt should just be apologized for and dismissed.  Catherine Kourouklis however, deliberately insulted Islam by saying to Prof. Ershad 'you and your fucking religion' but she remains in her job.").

[93]     Furthermore, the Complaint alleges only one comment directed at plaintiff personally:  on one occasion, Kourouklis addressed plaintiff as "sweetie," which she found offensive.  However, the term "sweetie" does not give rise to any relevant inferences.

worker do not give rise to a reasonable inference of hostility that is "sufficiently severe or pervasive to alter the conditions of the victim's employment."[94]

Plaintiff also claims a hostile work environment arising from the student body's general hostility toward her as an Asian, female, and non-Moslem.[95] However, even if the student body were severely and pervasively hostile, and even if their hostility were motivated by race, sex, or religious intolerance, there would be no "specific basis for imputing the conduct creating the hostile work environment to [NYIT]" based on the facts alleged.[96]  Nor is there a plausible basis for imputing a discriminatory motivation to Kourouklis in allegedly aiding and encouraging the students' hostility toward plaintiff.  Rather, much like the

---

[94]     *Monterroso*, 591 F. Supp. 2d at 584.

[95]     In fact, the record implies the students were motivated by other concerns.  Plaintiff effectively concedes that she believed the student complaint regarding her pink-mosque comment was motivated not by sexism, racism, or religious intolerance, but rather by the desire to "get back" at plaintiff for giving the students bad grades and a heavy workload.  Compl. ¶ 64.

[96]     *Duch*, 588 F.3d at 762.  In a conclusory fashion, the Complaint alleges: "[NYIT] pandered to, and in fact, indulged ageism, sexism, racism, and especially religious intolerance both in its student body and in its faculty members."  Compl. ¶ 123.  However, because *none* of plaintiff's factual allegations even remotely support this accusation, there is no basis for imputing the students' alleged classroom conduct to NYIT.

students' motivation, the allegations indicate a "personal agenda."[97]  Plaintiff's

allegations are simply too thin and conclusory to support a facially plausible claim

for hostile work environment.  Defendant's motion to dismiss plaintiff's claim for

hostile work environment under Title VII and the ADEA is therefore granted.

### 3.    Doner-Hedrick's Title VII Retaliation Claim Is Dismissed

NYIT moves to dismiss plaintiff's claim for retaliation under Title

VII.  In the Complaint plaintiff alleges that NYIT retaliated against her through its

alleged statements to the EEOC after plaintiff was terminated.  However, in

opposition to this motion, plaintiff sets forth a new argument, alleging that

Kourouklis, as an agent of NYIT, facilitated plaintiff's termination in retaliation

for plaintiff's report to NYIT's administration that Kourkoulis made inappropriate

remarks toward another faculty member concerning his religion.

With regard to the first theory of retaliation, plaintiff alleges that

NYIT's response to plaintiff's EEOC charge constituted retaliation because it was

the first time NYIT alleged that plaintiff was terminated as a result of misconduct.

Although "anti-retaliation protection is broader and 'extends beyond workplace-

related or employment-related retaliatory acts and harm,'" it does not extend to

---

[97]    *See, e.g.*, Compl. ¶ 26 (quoting an e-mail dated November 13, 2008,
from Smith to Doner-Hedrick:  "[Catherine Kourouklis] needs to give up her
*personal agenda* to rid Amman of the Fine Arts CG faculty," of which plaintiff
was a member.").

allegations made in quasi-judicial proceedings such as EEOC hearings.[98]  Because

statements made in the context of an EEOC hearing are absolutely privileged, they

cannot give rise to liability.  Therefore, to the extent that plaintiff's retaliation

claim relies on NYIT's statements to the EEOC, defendant's motion to dismiss is

granted.

        With regard to the second theory of retaliation, also raised for the first

time in opposition to this motion,[99] plaintiff alleges that Kourouklis facilitated

plaintiff's termination in retaliation for plaintiff's report to NYIT administration

about Kourouklis' discriminatory remarks toward another faculty member.  Under

Title VII, an employer is liable for "the acts of its agents within the scope of their

employment."[100]  For example, if a supervisor terminates a subordinate for

discriminatory reasons, the employer is vicariously liable under Title VII because

---

[98]     "Statements uttered in the course of a judicial or quasi-judicial proceeding are absolutely privileged so long as they are material and pertinent to the questions involved notwithstanding the motive with which they are made. This absolute privilege attaches to every step of a judicial proceeding, not just the hearing and trial phase. . . . This privilege applies to statements submitted to agencies such as the EEOC." *Bernstein v. Seeman*, 593 F. Supp. 2d 630, 636 (S.D.N.Y. 2009) (quotation marks and citations omitted).

[99]     Although the Court would normally require a plaintiff to seek leave to replead before introducing an entirely new claim, I address it nonetheless to avoid the inefficiency of futile repleading.

[100]    *Tishman*, 2005 WL 3466022 at *2.

the authority and discretion to terminate is vested by the employer and within the scope of the supervisor's employment.[101]  However, Kourouklis was merely plaintiff's co-worker, without any authority to terminate plaintiff.  Accordingly, NYIT's motion to dismiss plaintiff's claim for retaliation under Title VII is granted.

### 4. Doner-Hedrick's Claims Against NYIT's "Trustees and Officers" under Title VII and the ADEA Are Dismissed[102]

Neither Title VII nor the ADEA permit individual liability, and where a plaintiff has named a corporate defendant, it is redundant to also name individual agents of that corporate defendant, even in their "official capacity."  Because plaintiff has named NYIT as a defendant, and to the extent plaintiff seeks to hold NYIT's agents individually liable, defendant's motion to dismiss is granted as to plaintiff's claims under Title VII and the ADEA against NYIT's "Trustees and Officers."

---

[101]    *See Mack v. Otis Elevator Co.*, 326 F.3d 116, 124 (2d Cir. 2003) ("[I]f behavior illegal under Title VII culminates in a supervisor's tangible employment action, the employer will, *ipso facto*, be vicariously liable for it.") (citing *Ellerth*, 524 U.S. at 761).

[102]    Although she lists them in the caption to the Complaint, it appears that plaintiff has not, in fact, sued NYIT's "Trustees and Officers."  *See* Compl. ¶ 10, where she lists NYIT as the sole defendant.  However, because both parties briefed the issue, I address it here.

### C.   Doner-Hedrick's NYSHRL Claims Are Dismissed for Lack of Subject Matter Jurisdiction

Plaintiff's claim under the NYSHRL must be dismissed for lack of subject matter jurisdiction.  Plaintiff alleges that the discriminatory decision to terminate her was made in New York.  However, because plaintiff is not a resident of New York, plaintiff's factual allegations must additionally support a reasonable inference that NYIT's alleged discriminatory behavior had an actual impact in New York.  Plaintiff was working in Amman, Jordan at the time of her termination.  Thus, plaintiff does not allege that she felt any impact in New York.  Plaintiff's only allegation of an impact in New York is that plaintiff's termination "certainly [had] a profound impact on the entire faculty," including those in New York, because they saw their administration "behave in such a wanton and unlawful way" toward plaintiff.[103]  Even accepting, *arguendo*, this conclusory allegation, it would be irrelevant to meeting the impact requirement under *Hoffman v. Parade Publications*.  The relevant "impact" within the State that a plaintiff must plead (and later prove) is the direct effect of a discriminatory act on a protected individual – giving rise to a cause of action for that individual – not the attenuated reaction of third parties to such an individual's circumstance.  The *Hoffman* court adopted the impact requirement partly to simplify the application of the

---

[103]   Opp. Mem. at 21.

NYSHRL.[104]  An extension of the impact requirement to include third parties'

reactions to experiences of discrimination elsewhere in the world would make

application of the NYSHRL vague and impracticable.  At most, plaintiff "pleaded

that [her] employment had a tangential connection to the . . . [S]tate."[105]  Because

plaintiff makes no factual allegations to support a reasonable inference that NYIT's

allegedly discriminatory behavior had a relevant impact in New York, defendant's

motion to dismiss plaintiff's claims under the NYSHRL is granted.

### D.    Doner-Hedrick Is Not Covered by the the CBA

The plain terms of the CBA between NYIT and AAUP indicate that

plaintiff is not covered by the agreement.  Article II of the CBA, titled

"Recognition," states: "[NYIT] recognizes the AAUP as the collective bargaining

representative for" full-time faculty and other persons "employed by [NYIT] at its

---

[104]    15 N.Y.3d at 290-91 (explaining the rationale of the impact rule for applying City Human Rights Law, with equal application to the NYSHRL:  "The Appellate Division's rule that a plaintiff need only plead and prove that the employer's decision to terminate was made in the city is impractical, would lead to inconsistent and arbitrary results, and expands NYCHRL protections to nonresidents who have, at most, tangential contacts with the city.  Indeed, the permutations of such a rule are endless. . . .  In contrast, the impact requirement is relatively simple for courts to apply and litigants to follow, leads to predictable results, and confines the protections of the NYCHRL to those who are meant to be protected – those who work in the city. . .").

[105]    *Id.* at 292.

campuses *located at Nassau County, Suffolk County, and New York County.*"[106]

Because plaintiff was employed at NYIT's campus in Amman, Jordan, she was not

covered by the CBA, and therefore does not have a cause of action arising from the

CBA.  Defendant's motion to dismiss plaintiff's claim for breach of the CBA is

therefore granted.

### E.     Doner-Hedrick's FLSA and/or IRC Claim Is Dismissed

Plaintiff alleges that NYIT employs full-time faculty at its foreign

campuses as independent contractors, thereby avoiding the obligation to contribute

to employee benefits.  Plaintiff's fourth claim arises from this practice under the

FLSA, but in opposition to the instant motion she withdraws her FLSA claim and

asserts a violation of the IRC.  Plaintiff may not simply insert an entirely new

statutory basis for a claim in opposition to a motion.  Therefore, plaintiff's fourth

claim is dismissed, but she is granted leave to replead with applicable statutory

authority.

### F.     Leave to Replead

Leave to replead is typically granted unless amendment would be

futile.  Here, for example, plaintiff may be able to allege some new facts that give

---

[106]     AAUP-NYIT Collective Bargaining Agreement, Art. II, Ex. 6(b) to
4/15/11 Declaration of Joy Hochstadt, plaintiff's counsel, in Opposition to the
Defense Motion to Dismiss.

rise to an inference of age discrimination, including the age of other faculty members and whether she was replaced by a younger professor.  She may also properly present her fourth claim, addressing NYIT's alleged practice of employing full-time faculty at foreign campuses as independent contractors. Because amendment to plaintiff's claims may not be futile, she may file an amended Complaint within thirty (30) days of the date of this Order.  If plaintiff fails to do so, the claims dismissed herein will be dismissed with prejudice.

## VI.    CONCLUSION

For the foregoing reasons, defendant's motion is granted as to plaintiff's claims for (i) disparate treatment, hostile work environment, and retaliation under the ADEA, (ii) hostile work environment and retaliation under Title VII, (iii) violation of the NYSHRL, (iv) violation of the FLSA and/or the IRC, and (v) breach of the CBA.  Defendant's motion is denied as to plaintiff's claim of disparate treatment under Title VII.  The Clerk of the Court is directed to close this motion (Docket No. 7).  A conference is scheduled for August 11, 2011 at 4:30 PM.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            July 5, 2011

**-Appearances-**

**For Plaintiff:**

Joy Hochstadt, Esq.
300 Central Park West
New York, NY 10024
(212) 580 - 9930

**For Defendant:**

Douglas P. Catalano, Esq.
Neil G. Sparber, Esq.
Fulbright & Jaworski L.L.P.
666 Fifth Avenue
New York, NY 10103
(212) 318-3000